870 P.2d 1

**Rex JONES, aka Raymond Jones, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 20151.

Court of Appeals of Idaho.

Feb. 25, 1994.

Manweiler, Bevis & Cameron, P.A., Boise, for appellant. David D. Manweiler, argued.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise; for respondent. Michael A. Henderson, argued.

PERRY, Judge.

This is an appeal from the summary dismissal of an application for post-conviction relief. For the reasons stated below, we affirm.

## FACTS AND PROCEDURAL HISTORY

On July 27, 1989, Rex Jones was found guilty by a jury of sexual abuse of a minor under the age of sixteen. I.C. § 18–1506. He was sentenced to a unified term of twelve years' incarceration with a minimum period of confinement of four years. This Court previously affirmed Jones' sentence in *State v. Jones,* 118 Idaho 720, 800 P.2d 116 (Ct. App.1990). In March of 1992, Jones filed an application for post-conviction relief. On motion by the state, the application was summarily dismissed by the district court, and Jones filed a motion for reconsideration. The motion to reconsider was granted only for the purpose of reviewing additional affidavits, and the district court ultimately affirmed its original dismissal. Jones then filed this appeal. Jones contends the district court erred in summarily dismissing his application. More specifically, Jones claims there was a material issue of fact whether the district court should have inquired if he had received and reviewed a copy of the presentence investigation report prior to sentencing. Jones also claims a material issue of fact exists as to whether he was afforded effective assistance of counsel at trial.

## ANALYSIS

### I. STANDARD OF REVIEW

Idaho Code § 19–4906(b) provides that the district court may dismiss an application for post-conviction relief unless the application contains allegations which, if proved, would entitle the applicant to the remedy sought. *Griffith v. State,* 121 Idaho 371, 825 P.2d 94 (Ct.App.1992). On review of a dismissal of a post-conviction application without an evidentiary hearing, we must determine whether there are genuine issues of material fact. I.C. § 4906(c); *State v. Goodrich,* 104 Idaho 469, 472, 660 P.2d 934, 937 (1983); *Olds v. State,* 122 Idaho 976, 978, 842 P.2d 312, 314 (Ct.App.1992). As we do with a motion for summary judgment under I.R.C.P. 56, we determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions on file, together with any affidavits. Moreover, the court will liberally construe the facts in favor of the party opposing the motion, together with all reasonable inferences to be drawn from the evidence in favor of the non-moving party. *Loomis v. City of Hailey,* 119 Idaho 434, 807 P.2d 1272 (1991); *Bonz v. Sudweeks,* 119 Idaho 539, 808 P.2d 876 (1991); *Mitchell v. Siqueiros,* 99 Idaho 396, 582 P.2d 1074 (1978).

The Uniform Post–Conviction Procedure Act as adopted in Idaho, I.C. §§ 19–4901–19–4911, provides an appropriate mechanism for considering a variety of claims that could not be raised in trial or on direct appeal. The Act is available "to cure fundamental errors

occurring at the trial which affect either the jurisdiction of the court or the validity of the judgment. . . ." *Maxfield v. State,* 108 Idaho 493, 499, 700 P.2d 115, 121 (Ct.App.1985), *quoting Smith v. State,* 94 Idaho 469, 474–75, 491 P.2d 733, 738–39 (1971).

## II. PRESENTENCE INVESTIGATION REPORT

■ In his application for post-conviction relief, Jones first alleges that the district court erred by not adequately inquiring whether he had seen and reviewed the pre-sentence investigation report, thereby denying him the opportunity to correct any errors contained therein. The Idaho Supreme Court has held that in order to ensure the reliability of presentence investigation reports, a defendant must be afforded the opportunity to present favorable evidence, to examine all materials contained in the report and to explain and rebut adverse evidence. *State v. Pizzuto,* 119 Idaho 742, 760, 810 P.2d 680, 698 (1991).

Jones alleges that the district court failed to "investigate" whether the report had been reviewed by him. Prior to sentencing, Jones was informed that a report would be prepared, and he would have the opportunity to review it. Furthermore, during sentencing, the presentence report was mentioned on several occasions by the prosecuting attorney and the district judge. Jones raised no objection at that time regarding either his inability to review the report or the comments made by the court and counsel concerning the contents of the report. Without some indication that Jones had not seen the report, the district court was not required to "investigate" whether he'd actually seen it.

Furthermore, now that Jones has seen the report, he has failed to allege in his application for post-conviction relief what errors, if any, appear in the presentence investigation report and any resulting prejudice. Under the summary dismissal procedure as outlined by I.C. § 19–4906(c), the court may grant a summary dismissal if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Even assuming the facts alleged in Jones' affidavits are true, Jones has failed to allege

any errors or corrections he would have made at sentencing. Because he has failed to indicate what errors were contained in the presentence report that resulted in prejudice, Jones is not entitled to relief. Therefore, the state, as a matter of law, is entitled to summary judgment. The district court did not err in summarily dismissing the application for post-conviction relief on these grounds.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

The second prong of Jones' appeal is a claim of ineffective assistance of counsel. As part of this claim, Jones cites the following as specific areas in which his counsel was ineffective: a general failure to communicate with Jones, failure to conduct proper pretrial investigation and discovery, failure to challenge allegedly biased jury members, failure to challenge Jones' confession based on a lack of *Miranda* warnings, failure to object to introduction of prior bad acts and failure to withdraw once an attorney-client conflict arose.

■ In order to prove a claim of ineffective assistance of counsel, an applicant must show that the attorney's conduct fell below an objective standard of reasonableness. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Aragon v. State,* 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). There is a strong presumption that trial counsel's performance falls within the wide range of "professional assistance." *Id.* An applicant must not only show incompetence, but must also show that the deficient conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied upon as having produced a just result. *Ivey v. State,* 123 Idaho 77, 80, 844 P.2d 706, 709 (1992). In *Strickland, supra,* the United States Supreme Court advanced a two-part test to determine whether a claim of ineffective assistance could prevail. A defendant must demonstrate not only that trial counsel was deficient, but also that the deficiency led to some prejudice. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The Idaho Supreme Court has also noted that "The constitutional requirement for effective assistance of counsel

is not the key to the prison for a defendant who can dredge up a long series of examples of how the case might have been tried better." *Ivey*, 123 Idaho at 80, 844 P.2d at 709. We will examine each allegation of the ineffective assistance claim separately.

### A. Failure to Communicate

■ Jones alleges that his counsel failed to communicate with him both before and during the trial. Specifically, he claims that counsel failed to meet with and advise him following his arrest, failed to inform him of pre-trial procedures and the possibility of plea negotiations, failed to return his calls and letters, failed to advise him of the ramifications of testifying at trial and failed to provide him with a copy of the presentence investigation report.

Jones does not indicate, however, what effect these various allegations had on the trial or how he would have proceeded differently. In order to avoid the summary dismissal of his claim, Jones must demonstrate that he is entitled to some relief. Because these allegations of failure to communicate are in the context of an ineffective assistance claim, Jones must demonstrate that the alleged errors produced some prejudicial result. With respect to a post-arrest consultation, information regarding the trial process and failure to return letters and calls, Jones points to no prejudicial results from these claims. Although better communication between lawyer and client may have eased some of Jones' fears, a lack of it, without allegations of prejudice, is not enough to sustain an ineffective assistance claim.

With respect to informing Jones of the ramifications of testifying at trial, Jones does not claim he would have refrained from testifying. Indeed, Jones' entire theory of defense, that his actions were intended to frighten his stepdaughter, necessitated that he testify. As we have already discussed in Part II of this decision, Jones cites no errors in the presentence investigation report and instead merely alleges, without support in the record, that he was not permitted to review it. With no indications of prejudice set forth in Jones' application, the state was entitled to judgment as a matter of law.

Therefore, the district court did not err in granting the state's motion for summary dismissal as to these specific claims.

### B. Failure to Conduct Pre–Trial Discovery and Investigation

■ Jones alleged in his application that his trial counsel failed to conduct prompt and thorough discovery, failed to follow up on a motion to compel and failed to locate certain witnesses prior to trial. Jones does not, however, disclose the nature of this missing information. Because we are still within the confines of an ineffective assistance claim, Jones must show some prejudice resulting from his trial counsel's failure.

Jones' assertions of failure to conduct thorough and prompt discovery arise from an allegation that trial counsel failed to "follow up" on a motion to compel. Jones claims this would have produced "information that may have been used in my Defense or should have been known to me prior to trial." Jones does not state, however, what this information was or how it would have been used in his defense. Bare assertions that discovery was not properly conducted or that all avenues of investigation were not exhausted will not, by themselves, give rise to a right to relief. An applicant must provide at least some indication of what information is missing or how it would have been used in the defense. Without such a showing, there can be no evidence of prejudice and a claim is subject to summary dismissal.

Jones faces a similar result with his claim that certain witnesses were not called to testify. One witness, a neighbor of Jones, was not called. Jones does not provide us with any information regarding the substance of her testimony or in what way it would have contributed to the defense. Although Jones does properly provide what he believed the substance of the testimony of the victim's psychologist would have been, we cannot see how it would have aided his defense. The thrust of the psychologist's testimony, according to Jones, would be that the victim was an unstable child with poorly developed emotional maturity, implying that she may have lied. Jones, however, never claimed that the alleged incident of improper

touching did not take place, but instead he claimed the incident was only done out of hate, not for sexual gratification. The psychologist's testimony would have been irrelevant because the incident of improper touching was never in dispute; rather, the dispute centered on Jones' intent. With respect to these witnesses, Jones has failed to establish a right to relief.

Accordingly, we conclude that the district court did not err in summarily dismissing the application on these claims.

## C. Failure to Challenge Jury Members

■ Jones alleges that his trial counsel failed to object to three members of the venire panel who eventually were selected to serve on the jury. These persons included one who had friends that had been raped as teenagers, one who had served prison time for an incestuous relationship with his sister and one who was on medication and also knew the court clerk.

Jones does not assert that these facts were unknown to trial counsel or that their significance was unnoticed, but rather he contends that trial counsel should have objected to these prospective jurors and failed to do so. We have held that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law or other shortcomings capable of objective evaluation. *Davis v. State*, 116 Idaho 401, 406, 775 P.2d 1243, 1248 (Ct. App.1989). Likewise, an applicant for post-conviction relief cannot establish a claim of ineffective assistance of counsel merely because of a disagreement with a strategic or tactical decision. An applicant must make at least some claim of inadequate preparation, ignorance of relevant law or some other objective indication of ineffective assistance in order to sustain his burden of proof. Also, as the district court noted, Jones failed to allege any prejudice by the inclusion of these persons on the jury.

Without allegations demonstrating objective failure, the district court correctly dismissed Jones' claim regarding the failure to object to certain jury members.

## D. Failure to Pursue *Miranda* Issues

■ Jones alleges that his trial counsel was inadequate because he failed to raise and pursue the fact Jones was not given *Miranda* warnings prior to signing a confession in November of 1988. The district court dismissed this claim, finding that Jones was not in custody at the time of the confession and, therefore, the lack of *Miranda* warnings were not relevant.

■ Prior to any "custodial interrogation," anyone accused of a crime must be informed of various rights, including the right to remain silent and the right to counsel. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). "Custodial interrogation" means questioning initiated by law enforcement personnel after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. *Id.* Any statements obtained without properly informing an accused of his or her rights may not be used in a subsequent prosecution to prove guilt. *Id.*

The district court concluded that even if all the statements in Jones' affidavit were true, it was not established that he was in custody. We agree. Jones' affidavit indicates he went to the police station voluntarily before giving his written confession. Both this Court and the United States Supreme Court have found *Miranda*-based rights were not violated in situations similar to the one before us where a defendant voluntarily appeared at a police station and ended up giving an incriminating statement. *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *State v. Silva*, 106 Idaho 14, 674 P.2d 443 (Ct.App.1983). Jones was not placed under arrest at that time, nor was any significant restraint on his freedom imposed. Following his interview by the police, Jones freely left the station. Jones was not placed under arrest until April of 1989. The fact that Jones may have been "coerced" to go to the police station by his ex-wife, who informed him he would not be allowed to stay in her house unless he spoke to the police, is irrelevant to our analysis here. Assuming that all the allegations in

Jones' affidavit are true, we cannot say he was in custody. Therefore, no *Miranda* warnings were required and counsel's failure to pursue this issue cannot be said to be error. This claim in Jones' application for post-conviction relief was properly denied.

### E. Failure to Object to Introduction of Prior Bad Acts

■ Jones asserts in his application that trial counsel failed to "object to testimony regarding Defendant's alleged prior inappropriate behavior with his stepdaughter." Jones' affidavit in support of his application merely restates that trial counsel "failed to object to testimony regarding my alleged prior inappropriate behavior with my step-daughter." These allegations are not supported by any reference to the trial transcript nor is the substance of the testimony revealed. Without specific testimony or reference to the record, Jones' application must be dismissed. Similar to the burden on an appellant in a direct appeal, error must be affirmatively shown on the record by an applicant. *Kugler v. Drown,* 119 Idaho 687, 690, 809 P.2d 1166, 1169 (Ct.App.1991). Conclusory allegations, unsubstantiated by fact, need not be accepted and are insufficient, by themselves, to entitle an applicant to an evidentiary hearing. *Hays v. State,* 113 Idaho 736, 747 P.2d 758 (Ct.App.1987). Jones' claim that trial counsel failed to object to certain testimony, without more, must be dismissed. Therefore, the trial court did not err when it dismissed the application on these grounds.

### F. Failure to Withdraw Because of Conflict of Interest

Jones alleges that trial counsel should have withdrawn because a conflict of interest arose. He does not, however, explain what this conflict was, other than implying that the two no longer agreed on many subjects. Without any evidence or allegations of an actual conflict of interest, the application was properly dismissed as to this claim.

### CONCLUSION

It was not error for the district court to summarily dismiss Jones' application for post-conviction relief. Jones is not entitled to any relief for the allegation that he did not see and review his presentence investigation report. On his claims of ineffective assistance, Jones has not shown any prejudice with respect to the alleged failure to communicate or the failure to conduct proper pretrial discovery. The question of challenging jury members is a strategic one and Jones' disagreement with that decision is not enough, by itself, to establish a right to relief. For the purposes of issuing *Miranda* warnings, it appears that Jones was not "in custody" and counsel's failure to pursue this issue does not give rise to a right to post-conviction relief. Jones has failed to meet his burden in establishing the failure to object to certain testimony regarding prior acts and the need for withdrawal due to a conflict of interest. Therefore, the district court was correct in summarily dismissing Jones' application for post-conviction relief.

WALTERS, C.J., concurs.

LANSING, Judge, dissenting.

I respectfully dissent from part III(D) of the Court's opinion. I conclude that Jones has raised factual issues requiring an evidentiary hearing on his claim that he received ineffective assistance of counsel by reason of his trial attorney's failure to move to suppress Jones' confession.

A convicted defendant is deprived of effective assistance of counsel and is therefore entitled to a new trial if he shows that his attorney unreasonably failed to pursue a meritorious motion to suppress incriminating evidence and that the defendant was prejudiced by this omission. *Carter v. State,* 108 Idaho 788, 702 P.2d 826 (1985); *Huck v. State,* 124 Idaho 155, 857 P.2d 634 (Ct.App. 1993). Jones alleges that his attorney should have moved to suppress statements given by Jones during police interrogation before Jones was advised of his constitutional right to remain silent and his right to counsel. The majority concludes that Jones was not "in custody" when he made the statements and that his attorney therefore was not deficient for failing to seek suppression based on noncompliance with the mandates of *Mi-*

*randa v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

As the majority notes, *Miranda* requires that individuals be advised of their constitutional rights, including the right to remain silent and the right to counsel, before being subjected to custodial interrogation. *Id.* at 444, 86 S.Ct. at 1612. Statements must be suppressed if they were obtained through custodial interrogation conducted without *Miranda* warnings. *Miranda,* 384 U.S. at 479, 86 S.Ct. at 16; *Berkemer v. McCarty,* 468 U.S. 420, 429, 104 S.Ct. 3138, 3144, 82 L.Ed.2d 317 (1984); *State v. Connor,* 124 Idaho 547, 549, 861 P.2d 1212, 1214 (1993). It is uncontroverted that Jones received no *Miranda* warnings before he made inculpatory statements to police which were later used by the state at trial. The central question, therefore, is whether the allegations of Jones' affidavit, if true, show that the statements were made during the course of a "custodial interrogation."

For *Miranda* purposes, custody is not limited to situations where a suspect has been placed under formal arrest. Rather, a person is "in custody" if he is "deprived of his freedom by the authorities in any significant way." *Miranda,* 384 U.S. at 478, 86 S.Ct. at 1630. The United States Supreme Court has rejected the proposition that the *Miranda* safeguards apply only after a suspect is formally placed under arrest, noting that such a bright line rule would "enable the police to circumvent the constraints on custodial interrogations established by *Miranda.*" *Berkemer,* 468 U.S. at 441, 104 S.Ct. at 3151. The Court indicated in *Berkemer* that the determinative inquiry is whether "a suspect's freedom of action is curtailed to 'a degree associated with formal arrest.'" *Berkemer,* 468 U.S. at 440, 104 S.Ct. at 3150, *quoting California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3519, 77 L.Ed.2d 1275 (1983).

This is an objective test, requiring a determination of whether "a reasonable man in [the defendant's] position would believe that he was deprived of his freedom of movement in a significant way." *State v. Myers,* 118 Idaho 608, 611, 798 P.2d 453, 456 (Ct.App. 1990). In making this determination we look to the totality of the circumstances. *State v.*

*Medrano,* 123 Idaho 114, 117–118, 844 P.2d 1364, 1367–68 (Ct.App.1992). In determining whether a suspect was in custody during interrogation, relevant factors to be considered include, *inter alia:* (1) the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will; (2) the nature of questioning, *e.g.,* whether there is prolonged accusatory interrogation; and, (3) circumstances showing a police-dominated atmosphere. *See, e.g., Berkemer; United States v. Griffin,* 7 F.3d 1512, 1518 (10th Cir.1993) and cases cited therein; *United States v. Griffin,* 922 F.2d 1343 (8th Cir. 1990); WILLIAM E. RINGEL et al., SEARCHES & SEIZURES, ARRESTS and CONFESSIONS § 27.3 (2d ed. 1993).

A typical case examining whether a custodial interrogation occurred is *United States v. DiGiacomo,* 579 F.2d 1211 (10th Cir.1978). In *DiGiacomo,* a suspected counterfeiter was confronted in a parking lot by four federal agents. He was separated from his companion and told that he was a suspect, that he could be arrested that evening, and that he could choose between immediate arrest or voluntary appearance the following day. After being questioned in the parking lot, he was allowed to leave. The court held that the agent's actions in the parking lot were the functional equivalent of arrest for purposes of *Miranda.* The court distinguished *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), where the defendant had appeared at the police station at the request of a detective under no threat of arrest, was frequently informed that he could conclude the interview at any time and would be free to leave, and in fact left at the conclusion of the interview.

In Jones' affidavit, he described the circumstances of his interrogation as follows:

> That on November 25, 1988, approximately 3:00 p.m., Detective Robert D. Flaten of the Boise Police Department, did call me at my ex-wife's house and asked me to come to the police station to give him my side of the allegations, or he would come to the house, one way or another he wanted a statement. That he wanted some kind of

statement from me. I told him that I did not want to and hung up the phone.

That my ex-wife told me that if I did not at least go and talk to him that I could not stay with her over the Thanksgiving weekend, and that I should not give him a statement but to just talk to him, and offered to drive me there and to wait for me.

That we arrived at the police station approximately 3:30 p.m. and that we had to wait until detective Flaten returned to the station, which was about 15 or 20 minutes.

Detective Flaten came into the lobby and asked me to come into the offices and he said hello to my ex-wife and my son.

That upon arrival into the office area detective Flaten said that he was glad that I came into the station because after I had hung up the telephone he went to my ex-wife's house, [address deleted], with the intent to arrest me. He also stated that upon his arrival to the house that no one was there, but did see my pick-up in the drive-way, so he knew that I was around.

That detective Flaten started asking me questions about the allegations. He asked me to give him a written or recorded statement, at this time I said I did not want to.

That detective Flaten then said that he wanted to help me, but only if I would help him, that if I did not I would be placed under arrest and I would go to jail at that time. I did not want to go to jail so I did give him a written statement.

That at the time of reading this first statement, detective Flaten said that I was lying about this or just not telling him the whole truth, then said that he thought that I was a sicko and made other allegations, that he was sick of talking to me, and if I didn't start telling the truth, I was going to jail then and there.

That detective Flaten said that if I cooperated with him and just give him what he wanted, a statement and Washington State address he would let me go and promised leniency. He promised I would not go to jail.

That detective Flaten said he was going to leave it up to the district attorney's office on what to do about this case.

.      .      .      .      .

That I had not yet been given a miranda warning or advised [of] my rights against self incrimination or the right to have an attorney present during questioning.

Jones' affidavit was presented in opposition to the state's motion for summary dismissal pursuant to I.C. § 19–4906. Such motions are analogous to motions for summary judgment under I.R.C.P. 56. *Ramirez v. State,* 113 Idaho 87, 89, 741 P.2d 374, 376 (Ct.App.1987). In this procedural context, the district court, and we on review, must assume these statements to be true, even if they appear to lack credibility, and we must draw all reasonable inferences in favor of Jones. *Matthews v. State,* 122 Idaho 801, 807, 839 P.2d 1215, 1221 (1992); *Parrott v. State,* 117 Idaho 272, 274, 787 P.2d 258, 260 (1990); *Tramel v. State,* 92 Idaho 643, 646, 448 P.2d 649, 652 (1968). If the evidence before the court on a motion for summary dismissal raises a genuine issue of material fact, the motion must be denied and an evidentiary hearing conducted where the factual issues may be explored. *Smith v. State,* 94 Idaho 469, 472, 491 P.2d 733, 736 (1971); *Ramirez,* 113 Idaho at 88, 741 P.2d at 375. A court may not weigh evidence or make determinations of credibility on a motion for summary dismissal. *American Land Title Company v. Isaak,* 105 Idaho 600, 601, 671 P.2d 1063, 1064 (1983) (reviewing summary judgment granted under I.R.C.P. 56). Thus, the question on appeal from the summary dismissal of an application for post-conviction relief is whether the evidence supporting the application alleges facts which, if true, would entitle the applicant to relief. *Whitehawk v. State,* 116 Idaho 831, 833, 780 P.2d 153, 155 (Ct.App.1989).

With these standards in mind, I can only conclude that Jones' affidavit has raised genuine factual issues regarding whether he was subjected to "custodial interrogation," and summary dismissal of his application was therefore improper. According to Jones' affidavit he went to the station only after being informed that Detective Flaten wanted a

statement. At the station, Flaten informed Jones that Flaten had already made an attempt to arrest Jones at his residence. Jones initially refused to make a statement. Although Jones had thus invoked his right to remain silent, Flaten continued to question him. Jones relented and gave a statement only after Flaten said Jones would be arrested if he did not "help" Flaten. After Jones made an initial statement, Flaten accused him of lying and again threatened him with arrest if he did not give a statement that Flaten considered to be truthful. In short, viewing the allegations in the light most favorable to Jones, he was essentially presented with a choice between making a confession that would satisfy Detective Flaten or being immediately arrested. There is no evidence that Jones was ever advised that he was free to leave, or that he could decline to answer questions. Assuming the truth of Jones' description of his interrogation, in my view, a reasonable person in Jones' position could conclude that his freedom of movement was significantly restrained and that he was not free to leave.

The majority relies upon the fact that Jones went to the police station voluntarily and that after making his statement he was allowed to leave. While those facts are relevant, they are not determinative. *See, e.g. United States v. DiGiacomo, supra; State v. Zancauske,* 804 S.W.2d 851 (Mo.Ct.App. 1991); *People v. Horn,* 790 P.2d 816 (Colo. 1990). The *Miranda* doctrine addresses circumstances where pressures exerted by the police impair a detainee's ability to exercise his privilege against self-incrimination. *Berkemer,* 468 U.S. at 437, 104 S.Ct. at 3148. Therefore, the primary focus must be upon the reasonable state of mind of the individual when the incriminating statement was given—not on what happened before the questioning began or after it was concluded.

If a police interrogation were conducted as Jones describes and without *Miranda* warnings, a defense attorney's failure to seek suppression of the confession could well constitute a level of performance falling below an objective standard of reasonableness. Further, the evidence is sufficient to raise a factual issue as to whether Jones' defense was prejudiced by his attorney's failure to seek suppression of a confession to the charged crime. Therefore, Jones' evidence on both elements of the two-part test for ineffective assistance of counsel enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is sufficient to preclude summary dismissal of his claim.

In summary, Jones' affidavit raised material issues of fact regarding the custodial nature of the police interview. While the allegations in Jones' affidavit remain to be proven by substantial and competent evidence, he is entitled to an evidentiary hearing where he may attempt to present such proof. Accordingly, I would vacate the district court's order summarily dismissing Jones' application for post-conviction relief and remand this case for an evidentiary hearing to determine whether Jones' incriminating statement was obtained in violation of his *Miranda* rights and whether Jones' trial attorney was deficient in failing to pursue a suppression motion.