867 P.2d 244

STATE of Idaho, Plaintiff–Respondent,

v.

Leslie Stanley WALKER,
Defendant–Appellant.

No. 20417.

Court of Appeals of Idaho.

Dec. 22, 1993.

Petition for Review Denied Feb. 15, 1994.

Alan E. Trimming, Ada County Public Defender, Deborah A. Whipple, Deputy Public Defender, Boise, for appellant.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

This is a sentence review. Pursuant to a plea bargain, Leslie Stanley Walker pled guilty to second degree kidnapping. I.C. §§ 18–4501, –4503. The court imposed a unified sentence of twenty-five years with a fifteen-year minimum period of confinement. We affirm.

On May 25, 1992, Walker, who was then twenty-eight years old, followed a seven year-old boy into a restroom at Julia Davis park in Boise, locked the door, and started beating the boy with his fists. Walker's attempt to subdue and sexually assault the boy was interrupted when the boy's cries sum-

moned help from outside. When Walker heard others trying to get in, he stopped hitting the boy and retreated into a bathroom stall. The boy unlocked the door and was met by concerned adults. Upon their arrival, the police found Walker in the stall and arrested him. The victim was cut, bruised, and possibly bitten. He suffered emotional trauma and submitted to a blood test for the AIDS virus because Walker tested HIV positive. Walker was charged with first degree kidnapping and felony injury to a child. In a plea agreement, he pled guilty and was sentenced on a reduced charge of second degree kidnapping.

Walker timely filed an appeal. He also moved the court to reconsider his sentence under I.C.R. 35. That motion was denied, as was an "amended" motion under the same rule. Walker has not challenged the denial of those motions on this appeal.

■ The statutory maximum punishment for second degree kidnapping is twenty-five years imprisonment. I.C. § 18–4504(2). Walker's sentence does not exceed that maximum. As a result, the sentence will be upheld unless it is shown to be unreasonable and therefore an abuse of discretion, considering the facts of the case. *State v. Broadhead*, 120 Idaho 141, 143–45, 814 P.2d 401, 403–05 (1991), *overruled on other grounds, State v. Brown*, 121 Idaho 385, 394, 825 P.2d 482, 491 (1992); *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). A sentence of confinement is reasonable if it appears at the time that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution. *Broadhead*, 120 Idaho at 145, 814 P.2d at 403; *Toohill*, 103 Idaho at 568, 650 P.2d at 710.

■ When reviewing a sentence imposed under the Unified Sentencing Act, we treat the minimum period specified by the sentencing judge as the probable duration of confinement. I.C. § 19–2513; *Broadhead*, 120 Idaho at 146, 814 P.2d at 404; *State v. Sanchez*, 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989). Thus, we view Walker's probable term of confinement as fifteen years. To prevail on appeal, Walker must

establish that under any reasonable view of the facts his fifteen-year minimum term of confinement is an abuse of discretion. In deference to the discretionary authority of the sentencing court, we will not substitute our view for that of the sentencing court where reasonable minds might differ. *Broadhead*, 120 Idaho at 145, 814 P.2d at 404; *Toohill*, 103 Idaho at 568, 650 P.2d at 710. However, when reviewing a sentence, we conduct an independent examination of the record, focusing on the nature of the offense and the character of the offender. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982).

■ Counsel for Walker acknowledges the seriousness of the offense. Walker attacked an innocent child in an attempt to force sex upon him. Walker's efforts were unsuccessful only because others came to the boy's rescue. Focusing on the character of the offender, Walker asserts that he is not the threat to society the court found him to be. He argues that he sought help to control his impulses, but none was forthcoming. Therefore the attack was in some degree a cry for help. He also asserts that his sentence does not fit his physical character in that he effectively received a life sentence because he suffers from one and possibly two fatal diseases, from which he may die while in prison.

We observe, as did the sentencing court, that Walker is a person who has not "been given the tools to deal with life very well." Born in 1963, he was abandoned by his natural parents. His adoptive parents physically abused him from the time he was four years old until he was removed from the home at age twelve. Soon thereafter, state authorities placed him in the North Idaho Childrens Home. Walker claims that during the five and one-half years he lived there, he was subjected to constant mental and physical abuse, and almost daily sexual abuse by other male residents.

Walker has a low-average IQ and, at school, was placed in special education classes. He graduated from Lincoln School in Boise in 1984, when he was twenty years old. The school offers classes for grades seven through nine for small groups of stu-

dents who have not responded well to standard educational settings. Physically, he is handicapped by increasingly severe tremors which make it difficult for him to control his extremities and which may be caused by Huntington's chorea. An exact diagnosis cannot be made because doctors lack medical information about his natural parents. Whatever the cause, the tremors make everyday tasks such as shaving and writing nearly impossible. Even feeding himself is very difficult. At the time of the crime, Walker's prescribed medication included a drug called cogentin to help relieve muscle spasms or soreness, and amitriptyline, an antidepressant. Walker has held a variety of jobs, most of which have been arranged by the Association of Retarded Citizens (ARC) and which have included close supervision by an ARC representative. When arrested, he was employed as a house cleaner at a hotel in Boise.

In most of the evaluative reports written about Walker over the last decade, Walker is reported as having serious behavioral problems. The psychological evaluation performed in 1992 after his arrest summarized the reports and stated that he has "a long history of impulse control problems, aggression and sexual identity issues" and "an extremely low frustration tolerance." He tends to "respond to stress or frustration with impuls[ive] sexual or aggressive behaviors."

The sexual identity issues Walker faces as an adult reflect his mistreatment as a child. A 1991 psychological evaluation includes a diagnosis of same-sex pedophilia. This diagnosis is repeated in Walker's 1992 psychological evaluation. His sexual focus is on young males because he can be the controlling party and "show them who's boss." He admits he will use force or violence to become the dominant party. Walker's sexual obsessions are dangerous because he uses them to relieve the frustration, boredom, and negative emotions he often feels.

Walker, however, does not dispute his obsessions. Instead, he argues that he merely needs counselling. Before the attack, Walker discussed his problems with several people. He called the police, seeking help. Apparently, the police were unable to intervene because they could not match Walker's report of committing a separate crime—having oral sex with a minor—with a criminal complaint. We note that Walker's adult criminal record consists only of a misdemeanor charge of using a telephone to harass in 1985 and a felony charge of joy riding in 1982. Either the police or Walker's "Personal Care Provider" referred Walker to SANE (Sexual Abuse Now Ended), a private counselling service. His first session with SANE was on April 27, 1992, his second was on May 5. Testing performed on May 12, 1992, included a penile plethysmograph, which measured Walker's response to graphic visual and audio sexual stimuli. The tests revealed an immediate and pronounced interest in consensual sex with male and female children, rape of a male child, and non-sexual assault of a female child. His highest responses were to pictures showing male children under nine years of age, whether clothed or unclothed, and to audio tapes of forcible or violent encounters. According to the SANE report, Walker appeared visibly stressed by the tests and was concerned that his response to young males was so strong.

Walker asserts that after his tests, SANE told him he was menace to society and turned him away. The record indicates otherwise. After the tests were finished, Walker was told to stay on his medication taken to curb emotions that may precipitate sexual offending and was advised of a self-administered aversion therapy. The SANE report states that Walker scheduled an appointment for the following week, at which time different treatment plans would be discussed. Fearful that Walker presented a threat to the community, his counsellor at SANE notified the Boise police department and another doctor, who recommended civil commitment as the only method of protecting the community. During an appointment with SANE on May 21, Walker told the counsellor that he had been exposing himself "a lot more lately in Ann Morrison Park" in Boise, and that he had not victimized more children because he was usually on foot and his disability would make it easy for him to get caught. Four days later, on May 25, 1992, Walker attacked the victim in the present case. Even while

dealing with SANE, however, Walker was apparently seeking out a more comprehensive place of refuge. The day after taking the SANE test on May 12, he sought admission to a local hospital as a psychiatric patient. The record is inconclusive as to whether he was successful, although Walker claims that he was denied admission because he was not mentally ill. He also telephoned the state Department of Health and Welfare, which responded by saying that he should return to SANE or call the police or a friend.

At the time he committed his crime, Walker clearly knew sex with children was wrong. Describing the incident to the presentence investigator, Walker stated that when he attacked the boy:

> [H]e really wasn't thinking, it was just something that happened. Although he knew it was wrong he claims his intentions were to have sex. He asserts he was frustrated and wasn't getting the help he needed in counselling mainly due to the fact that there were other incidences he couldn't talk about for fear of prosecution.

It is noteworthy that when he committed the crime, Walker was not taking his antidepressant medication but was remembering to take cogentin for muscle soreness caused by his tremors.

At sentencing, the judge addressed the relevant sentencing considerations and focused on the primary objective of protecting society. Defense counsel argued that Walker should be placed on probation under twenty-four hour a day supervision in a Personal Care Services (PCS) program. After his arrest, Walker told a psychologist that he needed twenty-four hour control by another person. Although the court thought the PCS program was appealing, the court concluded that the program could not provide adequate assurances to protect the public in the future. Essentially, the court was presented with two options: life-long, twenty-four hour supervision outside of prison, or the same supervision inside prison. The court opted for incarceration because the proposed alternative presented too high a risk that Walker's supervision would at sometime lapse and permit him to act on his impulsive sexual desires for young boys. In this regard, the court chose the alternative it thought was safest for the community. Although Walker's sentence appears to him to be inordinately long considering his life expectancy and compared to other sentences imposed for the same charges in other cases, each case must be evaluated on its own merits. Heeding our standard of review, we observe that the court properly considered its limited options and the merits of this case. In such a setting, we will not substitute a second point-of-view for that of the sentencing court's where reasonable minds might differ. Therefore, we find no abuse of discretion. The judgment of conviction and sentence are affirmed.

LANSING and PERRY, JJ., concur.