912 P.2d 124

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Mario R. VALVERDE, Defendant–Appellant.**

**No. 21726.**

Court of Appeals of Idaho.

Feb. 2, 1996.

Petition for Review Denied March 25, 1996.

Alan E. Trimming, Ada County Public Defender; Steven A. Botimer, Deputy Public Defender, Boise, for appellant.

Alan G. Lance, Attorney General; Kenneth F. Stringfield, Deputy Attorney General, Boise, for respondent.

**PER CURIAM.**

Mario Valverde appeals from his judgment of conviction and sentence for two counts of lewd conduct with a minor under sixteen, I.C. § 18–1508. He argues that the district court improperly admitted evidence, that there was insufficient evidence to support the jury's verdict and that the sentences imposed constitute an abuse of discretion. For the reasons stated herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

On April 7, 1994, Garden City Police Officers arrested Mario Valverde for committing lewd conduct with a minor, "HC," an eight year-old girl. At the jury trial, testimony revealed that earlier that evening, HC's mother had invited Valverde and his wife, Brenda, to her home for dinner. Valverde arrived late, after HC's mother, HC's stepfather and Brenda had already left for a neighborhood bar.

HC came home from playing in the park at approximately the same time that Valverde arrived. HC, knowing Valverde as one of her mother's friends, let Valverde into the house. Valverde had HC sit on his lap and he then rubbed her genitals outside of her clothes. HC's mother telephoned to find out when Valverde was meeting them at the bar and Valverde told her that he would be there in a few minutes. After the call, Valverde again had HC sit on his lap. He then rubbed HC's genitals beneath her clothes. HC's

mother called again and Valverde told her that he would be there after he was finished eating dinner. After the call, Valverde had HC lay on the floor beside him and rubbed HC's genitals beneath her clothes. HC's mother telephoned again and spoke with HC. At Valverde's request, HC told her mother that Valverde had left the house five minutes earlier.

Following the telephone call, Valverde carried HC to the bathroom, stood her up on the counter, pulled down her shorts and underwear and performed cunnilingus on her. Valverde then thanked her and left. HC then locked the outside door, sat down on a chair, and cried. Soon afterward, HC's sister, "BC," came home and found the door locked. HC asked who was at the door because she was afraid that it might be Valverde. She then unlocked the door and opened it. HC told BC that she was afraid, and then started crying, covering her face with her hands. She then told her sister what had happened.

BC took HC to the home of BC's friend, "TH," because they were afraid that Valverde might return. TH then called 911, and TH and HC spoke to the police and a paramedic on the telephone. The tape reveals that HC was crying as she spoke with the paramedic. A short time after the telephone call, HC's mother arrived at TH's house, as did police officers.

Garden City Police Officer Kevin Wittmuss testified that he arrived at TH's home in response to the 911 call with another officer and that he found HC crying, hysterical, hanging on to her sister, cowering from the officers and unable to talk to them.

While TH was testifying regarding the 911 call, the state moved for the admission of the 911 tape under the excited utterance exception to the hearsay rule. Valverde objected on the ground that the tape did not contain an excited utterance. The district court found that HC's statement was an excited utterance, and that although TH's statements were not excited utterances, they gave HC's

statement context and made sense of HC's version. The court instructed the jury that TH's comments on the tape were not admitted to prove the truth of the matter asserted, but only to establish the context for HC's statement, a nonhearsay purpose. The district court then admitted the tape into evidence.

The jury found Valverde guilty of two counts of lewd conduct with a minor under the age of sixteen. Valverde was sentenced to two concurrent unified sentences of ten years, with three years of fixed confinement for each count.

## ANALYSIS

### I. Excited Utterance

■ Valverde first argues that the district court improperly admitted HC's statement on the 911 tape as an excited utterance exception to the hearsay rule. See I.R.E. 803(2). While acknowledging that HC was crying during the 911 interview, Valverde contends that too much time passed between the acts of lewd conduct and HC's statement on the tape. The record reveals that HC's statement on the 911 tape occurred within approximately one-half hour after the last lewd act.

■ I.R.E. 803(2) provides:

**Hearsay exception; availability of declarant immaterial.**—The following are not excluded by the hearsay rule, even though the declarant is available as a witness.

．　　．　　．　　．　　．

(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition.

Whether a statement falls within the excited utterance exception to the hearsay rule is a question that is left to the sound discretion of the trial court. *State v. Bingham*, 116 Idaho 415, 421, 776 P.2d 424, 430 (1989)[1]; *State v.*

---

1. In *State v. Pizzuto*, 119 Idaho 742, 775, 810 P.2d 680, 713 (1991), the Supreme Court stated that *Bingham* has been overruled. *See also State*

*v. Sarabia*, 125 Idaho 815, 818, 875 P.2d 227, 230 (1994); *State v. Babb*, 125 Idaho 934, 940, 877 P.2d 905, 911 (1994). However, our re-

*Parker*, 112 Idaho 1, 4, 730 P.2d 921, 924 (1986); *State v. Stover*, 126 Idaho 258, 262–63, 881 P.2d 553, 557–58 (Ct.App.1994).

The excited utterance has two requirements:

> "First, there must be an occurrence or event sufficiently startling to render inoperative the normal reflective thought processes of an observer. Second, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought."

*Parker, supra, quoting McCormick on Evidence*, § 297 (3d ed. 1984). The rationale underlying the excited utterance exception derives from the "special reliability generally regarded as furnished by the excitement suspending the declarant's powers of reflection and fabrication." *State v. Peite*, 122 Idaho 809, 816, 839 P.2d 1223, 1230 (Ct.App.1992). In sex crime cases, the excited utterance exception often receives broader application than in other cases. *Parker, supra.* Our Supreme Court has held in the context of rape cases that two to three hours was not too long after the event to conclude that the victim was still under the stress of the event. *See Bingham, supra* (within two hours); *Parker, supra* (within two to three hours). Closer to the time frame in this case was that in *Peite, supra*, in which this Court held that the victim's statement made fifteen to twenty minutes after the rape was admissible as an excited utterance.

Based on prior cases and the obvious distress exhibited by HC on the 911 tape, we conclude that the tape was properly admitted as HC's statement constitutes an excited utterance.

## II. *Sufficiency of the Evidence*

■ Valverde argues that the evidence presented to the jury did not support a guilty verdict. When evidence is insufficient to support a guilty verdict, the conviction must be set aside. *State v. Nastoff*, 124 Idaho 667, 671, 862 P.2d 1089, 1093 (Ct.App.1993). Evidence is sufficient to support a verdict where there is substantial, even if conflicting, evi-

dence from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Bronnenberg*, 124 Idaho 67, 70, 856 P.2d 104, 107 (Ct.App.1993). This Court will not substitute its view for that of the jury as to the credibility of witnesses, the weight to be given to the testimony, or the reasonable inferences to be drawn from the evidence. *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App.1991). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Id.*

■ Valverde first argues that the jury "entirely disregarded the competent evidence presented on behalf of Valverde." The only evidence presented on behalf of Valverde was his own testimony and that of his wife, Brenda, and friend, Milton Madrill.

Brenda's testimony was consistent with that of the state's witnesses, except that she testified that HC's mother first telephoned Valverde at 8:00 p.m. rather than 7:00 p.m. as testified to by HC's mother. Madrill's testimony was inconsequential. His only testimony which contradicted the state's case was his statements placing Valverde at HC's home at a slightly later time than the time alleged by the state's witnesses. However, Madrill's assertion regarding the time-frame was undermined during cross-examination. In his testimony Valverde denied any wrongdoing with HC, had himself arriving at HC's home at a slightly later time than the time suggested by the state's witnesses, and stated that there were only two telephone calls from HC's mother. The jury chose to believe the state's witnesses. We will not second-guess the jury's determinations on appeal.

Valverde next argues that there was insufficient evidence to sustain the guilty verdict because there was no "scientific evidence" on the state's behalf. We reject this argument. First, Valverde fails to specify what scientific evidence he believes the state was required to present. Moreover, even had he done so, there is no authority for his position that the state's failure to present scientific evidence renders a jury's verdict invalid.

search indicates that *Bingham* has never been

explicitly overruled in any published decision.

Valverde has not carried his burden of demonstrating that there was insufficient evidence to support the jury's finding of guilt. Therefore, we uphold the jury's verdict.

### III. *Reasonableness of the Sentences*

■ Valverde received two concurrent unified sentences of ten years with three-year minimum terms of confinement. The sentences were within the statutory maximum of life imprisonment. *See* I.C. § 18–1508. On appeal, Valverde argues that the sentences imposed constitute an abuse of discretion and that the district court should have imposed a term of confinement in the county jail, along with a reasonable period of probation.

■ Where a sentence is within the statutory limits, an appellant has the burden of showing a clear abuse of discretion on the part of the court imposing the sentence. *State v. Cotton*, 100 Idaho 573, 577, 602 P.2d 71, 75 (1979). A sentence is reasonable, and hence not an abuse of discretion, to the extent it appears necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, and retribution. *State v. Walker*, 125 Idaho 11, 12, 867 P.2d 244, 245 (Ct.App.1993). When evaluating an exercise of the district court's sentencing discretion, we conduct an independent review of the record, focusing upon the nature of the offense and the character of the offender. *State v. Shideler*, 103 Idaho 593, 594, 651 P.2d 527, 528 (1982); *State v. Woodman*, 116 Idaho 716, 718, 779 P.2d 30, 32 (Ct.App.1989).

Based on our review of the record, we hold that Valverde's concurrent sentences of three to ten years serve to accomplish the goals of sentencing and do not constitute an abuse of discretion.

### CONCLUSION

We conclude that the district court properly admitted HC's statement on the 911 tape under the excited utterance exception to the hearsay rule. We further hold that there was sufficient evidence to support the jury's guilty verdict and that the district court did not abuse its discretion in sentencing Valverde. The judgment of conviction and sentences imposed are affirmed.