941 P.2d 337

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Kameryn D. OSBORNE, Defendant–Appellant.**

**No. 22726.**

Court of Appeals of Idaho.

June 10, 1997.

Petition for Review Denied
Aug. 15, 1997.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for defendant–appellant. Mitchell W. Brown argued.

Alan G. Lance, Attorney General, L. LaMont Anderson, Deputy Attorney General (argued), Boise, for plaintiff–respondent.

PERRY, Judge.

Kameryn D. Osborne appeals from his judgment of conviction for rape. I.C. § 18-6101(5). Osborne claims that he was provided ineffective assistance of counsel at his trial, that the district court failed to suppress an illegally obtained statement, that the prosecution failed to disclose exculpatory evidence and that the evidence presented was insufficient to support a guilty verdict. We affirm.

## I.

### FACTS AND PROCEDURE

Osborne and Emily Carmona were introduced on March 12, 1995. Osborne, Carmona and a group of friends drank throughout the evening of the twelfth and the morning of the thirteenth. Osborne and Carmona also danced together at least once during the evening. Carmona obtained a ride to her apartment from a third party and arrived home at approximately 7:00 a.m. She removed her clothes, other than her underwear, and fell asleep or passed out on the couch under a blanket. Osborne arrived at Carmona's home approximately one hour later with Carmona's roommate and his girlfriend. Osborne lifted the blanket and saw that Carmona was nearly nude. After Carmona's roommate and his girlfriend retired to a bedroom, Osborne disrobed and climbed

on the couch, under the blanket, with Carmona.

Osborne testified at trial that, after disrobing and joining Carmona on the couch, he had consensual sex with her until he got tired and stopped. Osborne claimed that Carmona was a willing participant because she opened her eyes at some point, she touched him, pulled him onto her and lifted her hips to allow him to remove her underwear. After the encounter, Carmona got up and went to her bedroom. Osborne stated that he got dressed and made a phone call to arrange a ride home. He went into Carmona's bedroom to speak to her, but she was angry and told him to get out and leave her alone. Osborne claimed that he then ate a sandwich he had purchased earlier and walked to a local high school to meet his ride.

Carmona testified at trial that she woke up on the couch and Osborne was on top of her. She pushed him off, went to her bedroom and got into bed. Osborne, nude, followed her and pulled at the blankets. Carmona stated that she told him to leave her alone and to leave the apartment. Carmona then went back to sleep. When the phone awakened her later, she got up and went to the bathroom. She then realized that she was no longer wearing her underwear. She also noticed that the tampon she had been wearing when she went to sleep was no longer in place. Carmona called a friend, stated that she thought she had been raped and asked for a ride to the hospital. At the hospital, the attending doctor indicated that Carmona's tampon had been pushed into the end of her vagina. The police were notified, and the tests in a rape evidence kit were performed.

Officer Maimer, of the Fort Hall Police Department, contacted Osborne that afternoon. Officer Maimer drove Osborne to the Blackfoot Police Department, where he and Osborne were let into the locked building by detective Hunsaker. The three men then went to a conference room near the sheriff's office. Detective Hunsaker questioned Os-

borne about the reported incident. Osborne gave a written statement wherein he admitted that he and Carmona had engaged in consensual sex. At the close of the interview, Osborne was returned home by officer Maimer.

Osborne was charged with rape pursuant to I.C. § 18–6101(5).[1] The case went to trial, with the district court sitting as the finder of fact. Osborne made an untimely motion to suppress his statement to the police. Osborne's trial counsel submitted an affidavit which alleged ineffective assistance of counsel as good cause for the delay. The district court heard testimony and argument and denied the motion. The district court found Osborne guilty and sentenced him to a unified term of seven years, with a minimum period of confinement of one year. The district court retained jurisdiction, awaiting an evaluation by the Department of Corrections. The execution of the sentence was stayed pending Osborne's appeal.

On appeal, Osborne asserts that his statement taken at the police station was illegally obtained because he was in police custody at the time and was never given the warnings required under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Osborne also claims that his conviction should be overturned and a new trial granted because the prosecution failed to disclose exculpatory evidence, namely the results of the rape kit tests taken the day of the incident which failed to detect the presence of semen. Osborne additionally claims that the evidence was insufficient to support the verdict and that he was provided ineffective assistance of counsel.

## II.

## ANALYSIS

### A. Motion to Suppress

■ We first address whether the statement made by Osborne at the Blackfoot police station was obtained in violation of *Mi-*

---

1. 18–6101. **Rape defined.**—Rape is defined as the penetration, however slight, of the oral, anal or vaginal opening with the perpetrator's penis accomplished with a female . . .

. . .
5. Where she is at the time unconscious of the nature of the act, and this is known to the accused.

*randa.* Osborne claims he was in custody and not given any of the warnings required by *Miranda.* Osborne sought, by motion, to have the statement suppressed. The district court denied the motion based on its finding that Osborne was not in custody.

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact where supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Shepherd,* 118 Idaho 121, 122, 795 P.2d 15, 16 (Ct.App.1990).

■ Unwarned inculpatory statements obtained while in police custody are to be excluded from evidence at trial in the state's case in chief. *State v. Nobles,* 122 Idaho 509, 511, 835 P.2d 1320, 1322 (Ct.App.1991). This Court set forth the analysis to be used when determining whether a given defendant is "in custody":

> *Miranda* warnings are triggered by custodial interrogation. *See State v. Ybarra,* 102 Idaho 573, 576, 634 P.2d 435, 438 (1981). The United States Supreme Court equated custody with a person being "deprived of his freedom by the authorities in any significant way." *Miranda,* 384 U.S. at 478, 86 S.Ct. at 1629. This test has been refined to mean when a person's freedom of action is "curtailed to a 'degree associated with formal arrest.'" *State v. Myers,* 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct.App.1990) (citing *Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984)). The Court, in *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977) ... instructed that the "test is an objective one based on the surrounding circumstances." To determine if a suspect is in custody, this Court, subsequent to *Mathiason,* adopted the Supreme Court's test that "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Myers,* 118 Idaho at 611, 798 P.2d at 456 (quoting *Berkemer,* 468 U.S. at 442, 104 S.Ct. at 3151).

... We must review the "totality of all the circumstances" that are presented in the record. *See Ybarra,* 102 Idaho at 578, 634 P.2d at 440 (citing *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497 (1980)); *see also* WILLIAM E. RINGEL, SEARCHES & SEIZURES ARRESTS AND CONFESSIONS §§ 27.3(a)-(c) (circumstances to be considered when determining whether a defendant is in custody are: location of interrogation, conduct of the officers, nature and manner of the questioning, time of interrogation, and other persons present).

*State v. Medrano,* 123 Idaho 114, 117–18, 844 P.2d 1364, 1367–68 (Ct.App.1992).

The question before this Court is whether Osborne was in custody at the time that he was questioned by detective Hunsaker and officer Maimer. Osborne claims that the following facts indicate that he was in police custody: (1) he was picked up at his residence by a man he knew was a police officer; (2) he was taken from Fort Hall to the Blackfoot police station and entered through a locked door; (3) the questioning lasted for up to two hours and forty minutes; (4) he was interviewed by two officers; and (5) he was unaware of why he was there.

Officer Maimer testified that Osborne went to Blackfoot voluntarily and that officer Maimer had not intimidated Osborne or told him that he had to go. Detective Hunsaker testified that the questioning lasted only about an hour. Detective Hunsaker also testified that he did not tell Osborne that he was under arrest and never stated that Osborne could not leave. Neither officer was in uniform, but it was apparent that they were police officers. Officer Maimer stated that Osborne never asked to be taken home. At the conclusion of the interrogation, officer Maimer returned Osborne to his home.

Officer Maimer testified that, to the best of his knowledge, Osborne was free to leave if he had so wished. There was additional testimony concerning exits from the police station available to Osborne other than through the locked door he entered. Detective Hunsaker testified that he did not read

Osborne the Miranda warning because, "Mr. Osborne was not in custody."

■ The facts of this case are similar to those in the previous decision of this Court in *State v. Birkla*, 126 Idaho 498, 887 P.2d 43 (Ct.App.1994). In *Birkla*, an officer asked the suspect to accompany him to the police station to answer questions and then placed the suspect in a room which the suspect thought was locked. As we stated there, the fact that questioning takes place in a police station does not necessarily mean that a party is in custody. *Birkla*, 126 Idaho at 502, 887 P.2d at 47.

Similarly, in *Medrano*, we held that the fact that the suspect is transported to the station by police and has no independent way to drive away, along with the fact that he was a suspect and the interrogation was to elicit the information necessary to charge him, was inadequate to constitute a custodial interrogation. *Medrano*, 123 Idaho at 118, 844 P.2d at 1368.

Osborne claims that his age, lack of education and unfamiliarity with the legal system all contributed to his perception that he was not free to leave. The operative test however, is an objective one, and the court must consider how a reasonable person in the suspect's position would have perceived the situation.

Osborne also argues that the district court erred by looking to the state of mind of detective Hunsaker. Although it appears that the district court did comment on the state of mind of detective Hunsaker to determine whether Osborne was in custody, any error in this regard does not change the result in this case. We freely review the law related to the suppression motion based upon the facts as found by the district court. In this case, those facts, aside from the officer's state of mind, lead to the conclusion that Osborne was not in custody.

Therefore, we conclude that Osborne was not in custody so as to necessitate the required warnings set forth by *Miranda*, and Osborne's statements were properly allowed into evidence by the district court.

## B. Rape Kit Disclosure

■ Osborne asserts that prior to trial, the prosecution failed to disclose exculpatory evidence, namely the results from the rape kit tests which were performed on Carmona immediately following the incident. The tests disclosed no presence of semen in Carmona's vagina. Osborne claims that this evidence was exculpatory because it tended to disprove the fact that intercourse had occurred. Although it is not clear from the record how or when the defense discovered the existence of this evidence, it is clear from the record that the evidence was known to the defense at the time of trial.

At trial, during direct testimony, Dr. Hill, who examined Carmona the day of the rape, testified that he "completed an evidence kit" at the time of the examination. Defense counsel, on cross-examination, then questioned Dr. Hill about the examination:

Q: You said you did an evidence kit. Did you find any semen or ejaculate in the vagina?

A: No. I did—in my report I stated that I did a wet matte where we take some of the secretions we can collect from the vagina and put it under the microscope for evidence of sperm and found none.

Osborne claims that he submitted a request for discovery that would have covered this information, but that the results were not provided.

■ The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that the prosecution disclose evidence in its possession which, if unrevealed, would deprive the defendant of a fair trial. *State v. Avelar*, 124 Idaho 317, 321, 859 P.2d 353, 357 (Ct.App.1993). A prosecutor breaches this duty and violates the defendant's rights when the prosecutor fails to disclose evidence which is both exculpatory and material. *State v. Gardner*, 126 Idaho 428, 436, 885 P.2d 1144, 1152 (Ct.App. 1994). Exculpatory evidence has been defined as evidence which tends to clear an accused of alleged guilt, excuses the actions of the accused, or tends to reduce punishment. *State v. Johnson*, 120 Idaho 408, 411, 816 P.2d 364, 367 (Ct.App.1991). The courts have held:

The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985), *quoted in State v. Higgins*, 122 Idaho 590, 597–98, 836 P.2d 536, 543–44 (1992); *Avelar*, 124 Idaho at 321, 859 P.2d at 357.

Osborne claims that if counsel had known that there was no semen in the vagina of the victim, he could have more adequately prepared for trial. Although the exculpatory nature of this evidence is questionable, given the fact that Osborne admitted to "having sex" with Carmona, the issue was not properly raised below and therefore is being challenged for the first time on appeal.

 Constitutional issues generally will not be considered by an appellate court if raised for the first time on appeal. *State v. McAway*, 127 Idaho 54, 60, 896 P.2d 962, 968 (1995). Failure to raise such an issue below is a waiver of the right to raise the issue on appeal. *Whitehawk v. State*, 119 Idaho 168, 170, 804 P.2d 341, 343 (Ct.App. 1991). One exception to this rule, however, allows for consideration of the issue if the court below committed a "fundamental error." A fundamental error is one that so profoundly distorts the proceedings that it produces manifest injustice, depriving the criminal defendant of the fundamental right to due process. *State v. Hadley*, 122 Idaho 728, 731, 838 P.2d 331, 334 (Ct.App.1992). The Idaho Supreme Court has defined fundamental error as error which goes to the foundation or basis of a defendant's rights or the foundation of the case or takes from the defendant a right which was essential to his or her defense and which no court could or ought to permit to be waived. *State v. Sarabia*, 125 Idaho 815, 818, 875 P.2d 227, 230 (1994).

 In this case, defense counsel was aware of the evidence and had the opportunity to raise any objection to its nondisclosure to the district court. Because he failed to do

so, the record on appeal does not establish whether the evidence was disclosed or, if it was not, how the nondisclosure may have affected the results of the proceeding. Failing to raise the issue below, therefore, precludes its consideration on appeal. In those instances where exculpatory evidence is discovered after trial, the appropriate mechanism to challenge the nondisclosure of the evidence would be a motion for a new trial under I.C. § 19–2406 and I.C.R. 34 or an action for post-conviction relief under I.C. § 19–4901.

## C. Sufficiency of the Evidence

 Osborne next claims that the evidence produced at trial was insufficient to support the verdict. When evidence is insufficient to support a guilty verdict, the conviction must be set aside. *State v. Valverde*, 128 Idaho 237, 240, 912 P.2d 124, 127 (Ct. App.1996). Evidence is sufficient to support a verdict where there is substantial, even if conflicting, evidence from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Id.*; *State v. Bronnenberg*, 124 Idaho 67, 70, 856 P.2d 104, 107 (Ct.App.1993). This Court will not substitute its view for that of the finder of fact as to credibility of the witnesses, weight of the evidence or reasonable inferences to be drawn from the evidence. *Valverde*, 128 Idaho at 240, 912 P.2d at 127; *State v. Gardiner*, 127 Idaho 156, 163, 898 P.2d 615, 622 (Ct.App.1995).

In this case, Osborne notes that Carmona testified that she was not aware that Osborne was having intercourse with her. He further argues that there are other explanations for the displacement of Carmona's tampon. Because we have decided above that the statement made by Osborne was properly admitted, however, there was adequate evidence to support the conclusion that sexual intercourse had occurred and that the victim was unconscious and unable to consent as set forth in I.C. § 18–6101. Based upon our review, we find that there was substantial evidence from which the district court could find the essential elements of the crime beyond a reasonable doubt.

## D. Ineffective Assistance of Counsel

Finally, Osborne claims that he was provided ineffective assistance of counsel at trial and that his conviction should be vacated on that ground. A claim of ineffective assistance of counsel is an issue rarely appropriate on direct appeal from a judgment of conviction; rather it is usually reserved for post-conviction relief proceedings, where a more complete evidentiary record can be developed. *State v. Allen,* 123 Idaho 880, 882, 853 P.2d 625, 627 (Ct.App.1993); *State v. Koch,* 116 Idaho 571, 573, 777 P.2d 1244, 1246 (Ct.App.1989). However, in this case we will consider Osborne's claims.

Osborne specifically alleges that his counsel: (1) failed to meet with him an adequate number of times to prepare for trial and failed to properly prepare for trial; (2) was unfamiliar with the law regarding un-Mirandized statements, erred by allowing the state to proceed first at the suppression hearing and erred by failing to call Osborne as a witness at the suppression hearing; (3) failed to properly address the issue of the rape kit and the results therefrom; and (4) failed to properly question Carmona and the treating physician regarding the displacement of the tampon.

To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient, and that the defendant was prejudiced by the deficiency. *Hassett v. State,* 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct.App. 1995); *Russell v. State,* 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990); *Davis v. State,* 116 Idaho 401, 406, 775 P.2d 1243, 1248 (Ct. App.1989). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State,* 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Russell,* 118 Idaho at 67, 794 P.2d at 656. To establish prejudice, the applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon,* 114 Idaho at 761, 760 P.2d at 1177; *Russell,* 118 Idaho at 67, 794 P.2d at 656.

Osborne first argues that counsel failed to meet with him an appropriate number of times and was inadequately prepared for trial because of his busy schedule. These allegations alone, however, do not establish ineffective assistance of counsel without evidence of some specific error or misstep by counsel. There is no minimum number of times an attorney must meet with a client prior to trial in order to be adequately prepared. *United States v. Olson,* 846 F.2d 1103, 1108 (7th Cir.1988); *United States ex rel. Kleba v. McGinnis,* 796 F.2d 947, 954 (7th Cir.1986).

Osborne argues that his counsel wasn't familiar with the law regarding *Miranda* warnings and failed to understand that Osborne felt he could not leave the police station. We have determined that, based on the facts as set forth at the hearing, Osborne was not in custody and therefore *Miranda* warnings were not required. Thus, an ineffective assistance claim cannot be premised upon the failure to properly bring a motion which Osborne would not have prevailed upon. Similarly, counsel's failure to object to the order in which the suppression arguments were heard and counsel's failure to call Osborne as a witness at the suppression hearing did not amount to ineffective assistance of counsel.

Osborne also alleges that his counsel failed to request and review medical records or the rape kit. The evidence of the rape kit essentially corroborated Osborne's version, namely that he had engaged in intercourse with Carmona but that he had not ejaculated. However, defense counsel questioned Dr. Hill about the kit and elicited that no semen had been found. Essentially, Osborne is now claiming that defense counsel failed to pursue a different defense—that Osborne had no intercourse with Carmona at all, rather than the defense pursued at trial, that the intercourse was consensual—which is inconsistent with Osborne's own version of the incident.

Strategic and tactical decisions will not be second-guessed or serve as basis for post-conviction relief under a claim of ineffective assistance of counsel unless that decision is shown to have resulted from inadequate

preparation, ignorance of the relevant law or other shortcomings capable of objective review. *Giles v. State*, 125 Idaho 921, 924, 877 P.2d 365, 368 (1994); *Gabourie v. State*, 125 Idaho 254, 258, 869 P.2d 571, 575 (Ct.App. 1994). Here it is clear that the decision to pursue one of two mutually inconsistent defenses was strategic, and failing to pursue the other defense does not give rise to an ineffective assistance of counsel claim.

■ Finally, Osborne argues that counsel, in cross-examining Carmona and the doctor, failed to pursue a line of questioning regarding how the tampon became displaced and failed to offer other explanations for the displacement. The decision whether to pursue this line of questioning with these witnesses, however, was again a tactical one as the defense did not advance the theory that the intercourse had not taken place, but rather that it was consensual. As stated above, strategic and tactical decisions are not second-guessed on appeal absent a showing of inadequate preparation, ignorance of the law or some other objective shortcoming.

### III.

### CONCLUSION

The district court did not err in determining that Osborne was not in custody for the purposes of *Miranda* warnings and therefore was not required to suppress his written statement. Failure to raise the issue of the rape kit report disclosure, when the defense was aware of this evidence at the time of trial, waived consideration of the issue on appeal. Based upon our review of the record, we find that substantial evidence did exist to support the verdict in this case. We also have determined that Osborne was not rendered ineffective assistance of counsel. Osborne's judgment of conviction and sentence are affirmed.

WALTERS, C.J., and LANSING, J., concur.